UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BLUE CROSS OF IDAHO HEALTH SERVICE, INC., an Idaho corporation,<br><br>    Plaintiff,<br><br> v.<br><br>ATLANTIC MUTUAL INSURANCE COMPANY, a New York corporation; ATLANTIC SPECIALTY INSURANCE COMPANY, a New York Corporation,<br><br>    Defendants. | Case No. 1:09-cv-246-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

   Blue Cross of Idaho ("Blue Cross") filed this action against Atlantic Mutual

Insurance Company and Atlantic Speciality Insurance Company (collectively, "Atlantic")

seeking a declaratory judgment that one or both defendants owe an indemnity obligation

under certain commercial general liability policies and umbrella policies for a settlement

and attorneys fees that Blue Cross paid to resolve the lawsuit *Verska, et. al. v. Blue Cross of Idaho, Inc.*, (the "Verska lawsuit"). Blue Cross filed its Second Amended Complaint on March 12, 2010, (Dkt. 41), which in addition to the declaratory judgment claim seeks damages for breach of contract for failure to honor obligations and policy terms, untimely payment of attorney fees and settlement amounts, and a claim for bad faith.

Atlantic filed its Answer and Counterclaim on April 2, 2010, (Dkt. 47), denying that either defendant is liable for sums Blue Cross claims Atlantic owes, and seeking its own declaratory judgment that Blue Cross forfeited any coverage that it might have had under any Atlantic Policy because Blue Cross failed to comply with the policy provisions. Atlantic seeks reimbursement of the $600,000 it paid to Blue Cross for Blue Cross's defense costs under a reservation of rights and under a theory of unjust enrichment.

In response to the Counterclaim, Blue Cross filed a Motion to Dismiss (Dkt. 48) pursuant to Fed. R. Civ. P. 12(b)(6), seeking to dismiss Atlantic's counterclaim for declaratory judgment and reimbursement on the grounds that there is no insurer right of reimbursement under the terms of Atlantic's policies.

The Court conducted a hearing on the Motion to Dismiss on August 12, 2010, and at its conclusion, took the matters under advisement. (Dkt. 71.) Thereafter, on August 18, 2010, Blue Cross filed a Notice of Supplemental Authority in further support of its motion. (Dkt. 18.) The matter is ripe for review. After carefully considering the pleadings, the party's briefs, oral argument, and the relevant authorities, the Court will grant Blue Cross's Motion and dismiss Atlantic's counterclaims, granting leave to Atlantic to refile a

**MEMORANDUM DECISION AND ORDER - 2**

counterclaim for declaratory judgment.

## DISCUSSION

**1. Motion to Dismiss Standards**

A motion to dismiss under Rule 12(b)(6) will be granted when the complaint, or in this case, the counterclaim, fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a complaint under this Rule, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, a complaint, or portions thereof, will be dismissed if the plaintiff cannot establish "any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007); *see also Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citing *Twombly* with approval).

A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations . . . but requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. The complaint must plead "enough facts to state a claim of relief that is plausible on its face." *Id*. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

If the complaint "lacks a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory," it must be dismissed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).[1]

## 2. Background and Arguments of the Parties

Blue Cross procured several different insurance policies with Atlantic Mutual and Atlantic Speciality covering different time periods. From July 2004 to July 2005, Blue Cross was covered by an Atlantic Mutual commercial general liability (CGL) policy for up to $1 million per occurrence and an Atlantic Mutual umbrella policy for up to $15 million in excess coverage. (Second Am. Compl. ¶. ¶. Exs. A, B, Dkt. 41).[2] Blue Cross was covered by similar Atlantic Speciality CGL and umbrella policies for the periods July 2005 to July 2006, and July 2006 to July 2007. (Second Am. Compl. ¶. ¶. Exs. C, D, Dkt. 41).[3]

Certain physicians brought a lawsuit (the *Verska* lawsuit) against Blue Cross in or

---

[1] Although there is a motion for summary judgment pending, in resolving the motion to dismiss the Court limited its review to the pleadings on file.

[2] Atlantic Mutual commercial general liability (CGL) policy No. 768-00-86-88-001, and Atlantic Mutual umbrella policy No. 768-00-86-88-001.

[3] Between July 2005 and July 2006, Blue Cross was covered by Atlantic Specialty CGL policy No. 712-00-72-86-000 for $1 million per occurrence and Atlantic Specialty umbrella - No. 712-00-72-86-00 up to $15 million. Between July 2006 and July 2007, Blue Cross was covered by Atlantic Speciality CGL policy No. 712-00-72-86-001 for $1 million per occurrence and Atlantic Speciality umbrella - No. 712-00-72-86-001 up to $15 million.

about April of 2008, alleging that Blue Cross tortiously interfered with their business relationships and caused them to lose business. The *Verska* plaintiffs alleged Blue Cross improperly leaked purportedly damaging information about them and their medical practice to others. Blue Cross notified Atlantic about the lawsuit under the terms of the Atlantic Policies, and claims Atlantic delayed providing Blue Cross with its coverage position until six months after Atlantic was notified. Once Atlantic issued its coverage position, Atlantic denied having any defense obligation to Blue Cross under the bodily injury coverage, but acknowledged it could have a defense obligation under its advertising liability coverage. (Ans. ¶32, Dkt. 47.) Subject to a reservation of rights, Atlantic acknowledged a potential defense obligation for the *Verska* lawsuit under the personal and advertising injury coverage while reserving the right to deny any obligation to indemnify Blue Cross because the policies at issue contained exclusions for professional liability, for knowing violations of the rights of another, and for breach of contract. (Atlantic's Response at 2, Dkt. 49).

Blue Cross alleges that, after Atlantic became involved in the litigation, Atlantic engaged in inappropriate conduct designed to frustrate the litigation, such as disputing Blue Cross's choice of counsel, imposing litigation management guidelines allegedly not in the policy, and so forth when trial was less than six months away. Atlantic admits that it consented to Blue Cross's chosen defense counsel to continue to defend the *Verska* lawsuit and to Blue Cross's control of the defense, while it continued to reserve its rights under the Policies. (Ans. ¶ 36, Dkt. 47.) Sixty days prior to trial, after mounting a

vigorous defense, Blue Cross agreed to participate in mediation. Blue Cross purportedly informed Atlantic, and alleges that Atlantic refused to provide any settlement authority or contribute to any settlement. Atlantic, on the other hand, admits that it knew of the mediation, denies that it was asked to contribute to the potential settlement, but admits that it agreed it would be detrimental for Atlantic to participate in the mediation. (Ans. ¶ 47, Dkt. 47.) Atlantic agreed to waive the "consent to settle" provision contained in the Policies. (Ans. ¶ 47, Dkt. 47.) The mediation was conducted on April 20, 2009, and Blue Cross reached a settlement with the *Verska* plaintiffs.

From the lawsuit's inception to mediation, Blue Cross incurred approximately $1 million in defense costs, and sought reimbursement of those costs plus indemnification of the Settlement Amount from Atlantic. Atlantic continued to refuse to indemnify Blue Cross or pay its defense fees. (Ans. ¶¶ 50–51, Dkt. 47.) However, on July 22, 2009, pursuant to a reservation of rights, Atlantic paid Blue Cross "$600,000 representing the reasonable and necessary defense costs and expenses incurred by Blue Cross," equivalent to 60% of Blue Cross's defense costs. (Ans. ¶ 52; Countercl. ¶ 19, Dkt. 47.) Blue Cross contends that Atlantic has wrongfully withheld payment for the additional defense costs and settlement sums under the Atlantic Policies, breached its agreements with Blue Cross, and engaged in bad faith.

Atlantic, on the other hand, denies that it delayed providing Blue Cross with its coverage position, and denies any improper conduct. In its two count counterclaim, Atlantic seeks a declaratory judgment declaring that Blue Cross forfeited any coverage

that it might have had by its "failure to comply with certain conditions to coverage and their failure to provide any excuse for its non-compliance." Atlantic seeks restitution of the $600,000 payment it made to Blue Cross pursuant to its reservation of rights and under a theory of unjust enrichment.

The respective positions of the parties concern whether an insurer has a right of reimbursement when the insurance policy at issue contains no provision for insurer reimbursement, if the insurer ultimately had no duty to defend. Blue Cross contends that, under the holding in *St. Paul Fire & Marine Ins. Co. v. Holland Realty, Inc.*, No. CV07-390-S-EJL, 2008 WL 3255645 (D. Idaho Aug. 6, 2008), an insurer has no right to reimbursement even in the absence of a duty to defend if the policy does not contain a provision for reimbursement. Blue Cross asserts that the Atlantic Policies have no provision for reimbursement upon a finding of no duty to defend, and any reservation of rights declaring otherwise had no force and effect. Blue Cross argues that an insurer cannot reserve rights that it does not have under the terms of its policy. As for the unjust enrichment claim, Blue Cross contends that, as a matter of law, Atlantic cannot maintain an equitable action when there is an express contract between the parties covering the subject matter in dispute.

Atlantic counters that it expressly reserved its right to seek reimbursement of defense costs based upon Blue Cross's forfeiture of coverage by its breach of the Policy's notice provisions. Atlantic claims that Blue Cross did not give notice to Atlantic until the *Verska* lawsuit was well underway and Blue Cross already had retained counsel.

**MEMORANDUM DECISION AND ORDER - 7**

Accordingly, Atlantic claims that it would be inequitable for Blue Cross to retain the $600,000 Atlantic paid after the lawsuit was settled, because Blue Cross forfeited any coverage that might otherwise have existed. Having breached the Policy's notice provisions, Atlantic argues that its insurance policies "do not apply" to the damages sought by Blue Cross in this lawsuit, and it had no duty to defend the *Verska* lawsuit. Atlantic alleges that its reservation of rights letter reserved Atlantic's right to seek reimbursement of defense costs to the extent coverage did not exist under the policies. And, Atlantic rejects Blue Cross's argument that unjust enrichment cannot be asserted under Idaho law each time a contract exists, citing *Idaho Lumber, Inc. v. Buck*, 710 P.2d 647 (Idaho Ct. App. 1985).

Finally, Atlantic argues that *St. Paul* is not binding upon this Court, and cites decisions from other jurisdictions that recognize an insurer's right to obtain reimbursement of defense costs even if the policies do not contain reimbursement language. The theory under those cases is that the insured has not paid premiums that would cover defense costs for claims that are not covered under the policy, and therefore it would be inequitable for the insured to retain any sums paid on its behalf. *See Buss v. Superior Court*, 16 Cal. 4th 35, 49 (Cal. 1997). Atlantic rejects the holding in *St. Paul*, claiming it represents the minority position and relies upon Illinois law, which the Idaho Supreme Court has routinely rejected when Illinois law is cited in other cases. (Response at 10, Dkt. 49.)

In its reply, Blue Cross distinguishes the case law relied upon by Atlantic because

**MEMORANDUM DECISION AND ORDER - 8**

Atlantic agreed to participate and contribute to Blue Cross's defense and Blue Cross objected to Atlantic's reservation of any right to reimbursement from the outset, whereas in the cases Atlantic cited, neither of those conditions had occurred. Moreover, Blue Cross contends that, after paying Blue Cross what Atlantic "believed" to be Blue Cross's necessary and reasonable defense costs, Atlantic cannot now change its position and recoup that money. In addition, Blue Cross distinguishes between the duty to defend and the duty to indemnify, asserting that Idaho law requires an insurer to defend and pay defense costs until such time as the insurer obtains a declaration that it has no coverage obligation. Blue Cross cites Idaho law that holds once a determination of no coverage is made, the insurer's obligation to pay to defend its insured ceases, but it may not recoup any costs paid up until the coverage determination is made. Finally, Blue Cross asserts that Atlantic's Counterclaims simply repackage its affirmative defenses, and is thus unnecessary and should be dismissed. (Reply at 2, citing Atlantic's First, Second, Third, and Fourth Affirmative Defenses, Dkt. 63.)

### 3. Analysis of *St. Paul Fire & Marine Ins. Co. v. Holland Realty, Inc.*

In *St. Paul*, the Court considered whether St. Paul had a duty to defend and indemnify its insured, Holland Realty, against a lawsuit filed by its clients, the Bloughs. The Bloughs sued Holland seeking damages that included a refund of the commission Holland charged when they purchased a bare ground lot, as well as attorney fees and costs. The Bloughs had paid Holland a commission not based on the cost of the lot, but based upon the value of the lot plus the value of the completed home. Ultimately, the

purchase price the Bloughs paid did not reflect the actual cost to build the home, as they performed some of the work themselves.

St. Paul agreed to pay for Holland's defense of the Blough case under a reservation of rights. St. Paul therafter filed a declaratory judgment action in this Court seeking reimbursement of defense costs from Holland under its reservation of rights letter. On summary judgment, St. Paul argued it was entitled to reimbursement because the policy it issued to Holland did not provide coverage for the allegations contained in the underlying Blough Case. The Court held that the policy excluded coverage for the alleged violations in the Blough complaint, and that St. Paul did not have a duty to defend or indemnify Holland in the Blough case. *St. Paul*, 2008 WL 3255645 at *6. The Court granted summary judgment to St. Paul on the coverage issue. *Id.* at *8.

Having determined that St. Paul did not have a duty to defend or indemnify because the policy excluded coverage, the Court next determined whether St. Paul was entitled to recover from Holland the defense costs it incurred before the coverage determination was made. *Id.* at *6. The Court stated that "[a] determination of no duty to defend does not necessarily entitle St. Paul to reimbursement of its defense costs. The Idaho appellate courts have not addressed the specific issue of whether an insurer is entitled to reimbursement of defense costs if the insurer had no potential liability and no duty to defend." *Id*.

The Court noted that decisions from other jurisdictions support the right of an insurer to reimbursement pursuant to two theories. First, courts have recognized a

unilateral reservation of rights, on the theory that the reservation letter creates an implied

contract when the insured accepts the defense. *Id.* at *7 (citing *Walbrook Ins. Co. v.

Goshgarian & Goshgarian*, 726 F.Supp. 777, 784 (C.D. Cal. 1989)). Second, courts have

applied the principal of unjust enrichment to find a reimbursement right. *Id.* (citing *Buss

v. Sup. Court*, 939 P.2d 766 (Cal. 1997)). These are the same theories Atlantic asserts in

this case.

In *St. Paul*, the policy did not expressly reserve any right to seek reimbursement.

As the parties do in this case, the insured argued that a reservation of rights letter could

not reserve rights that did not exist in the policy, while the insurer argued that a right to

reimbursement exists if the insurer properly reserved such rights in a letter, or under a

theory of unjust enrichment.

The Court rejected St. Paul's arguments and the case law supporting its position,

instead finding the holding in *General Agents Ins. Co. of Am. v. Midwest Sporting Goods

Co.*, 828 N.E.2d 1092, 1101 (Ill. 2005) persuasive. *Id. General Agents* held that "if the

insurance policy does not allow a right of reimbursement, then no right exists because the

insurer is not permitted to unilaterally modify the policy coverage." *Id*. The Court found

the *General Agents* decision to be the "most consistent with Idaho law," which holds that

"when the duty to defend is triggered, the insurer has a duty to defend the insured until a

coverage determination is made." *Id.* at *8 (citing *Kootenai County v. Western Cas. &

Sur.*, 750 P.2d 87, 89– 90 (Idaho 1988)). The Court further found that Idaho law does not

permit an insurer to change the provisions of its policy unilaterally with a reservation of

rights letter. *Id.* (citing *Mutual of Enumclaw v. Harvey*, 772 P.3d 216, 220 (Idaho 1989)). Instead, if an insurer wished to retain its right to seek reimbursement of defense costs in the event the claim is not covered, the insurer is "free to include such a term in its insurance contract." *Id.* (citing *General Agents Ins. Co. of Am.*, 828 N.E.2d at 1103.

As to the alternative theory of a right to reimbursement based upon unjust enrichment, the Court discussed *Buss v. Sup. Court*, 939 P.2d 766 (Cal. 1997), which held that a reimbursement right existed where the insurer agreed to defend the underlying action, but reserved all of its rights, including the right to be reimbursed for defense costs if it was later determined that there was no coverage under the policy. *Buss* determined that the right to reimbursement was implied by law under an unjust enrichment theory, because the insurance company should not be required to pay for coverage when claims were not covered, and the insured had not paid a premium for defense of such claims. *Id.* at *7. The Court, relying upon *General Agents*, rejected *Buss* "because the insured is not unjustly enriched when it accepts defense costs for policy claims not covered because the insurer is protecting itself from a later breach of contract claim." *Id.* at *8. In other words, the insured is not unjustly enriched if the insurer is tendering a defense to protect its own interests. *Id.*

Accordingly, the Court found that St. Paul was not entitled to recover defense costs incurred in defending Holland in the Blough Case because the policy did not contain a provision for reimbursement in the event a court determined it had no duty to defend. *Id.* While the Court granted summary judgment to St. Paul on its claim that it had no duty

to defend, it denied summary judgment as to St. Paul's request for reimbursement of its defense costs. *Id.* The Court concluded that St. Paul's reservation of rights letter could only retain those rights and duties listed in the policy, and absent preservation of a right to reimbursement in the policy, St. Paul's claim for reimbursement failed. *Id.*

## 4. Application of *St. Paul* to This Case

### A. *St. Paul* Is Persuasive Authority

Atlantic dismisses the holding in *St. Paul Fire & Marine Ins. Co. v. Holland Realty, Inc.*, No. CV07-390-S-EJL, 2008 WL 3255645 (D. Idaho Aug. 6, 2008), stating, without citing any authority, that the unpublished Idaho district court opinion "is not binding on this Court nor is it of precedential value." (Response at 3 Dkt. 49.) However, while the Honorable District Judge Edward J. Lodge's opinion may not bind this Court, in the absence of any contrary law issued from a higher court, *St. Paul* establishes persuasive authority within this district. *See Wilson v. Union Sec. Life Ins. Co.*, 250 F.Supp.2d 1260, 1262 (D. Idaho 2003) (explaining the binding authority principal and citing *Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001)); *In re Estes*, 254 B.R. 261 (Bankr. D. Idaho 2000) ("In order to promote consistency and predictability, and faith in the rule of law, this Court should depart from its prior decisions, whether rendered by the same or another bankruptcy judge, only upon compelling circumstances."); *Monarch Greenback, LLC v. Monticello Ins. Co.*, 118 F.Supp.2d 1068, 1077 (D. Idaho 1999) (deciding the issues raised by relying upon an unpublished Idaho district court decision, and noting that Ninth Circuit Rule 36-3, which prohibits courts from citing unpublished

opinions, applies only to Ninth Circuit decisions designated as unpublished and does not apply to district court decisions).

The Court finds the holding in *St. Paul* persuasive and directly applicable to this matter. In so doing, the Court undertook its own analysis of the case law relied upon in *St. Paul*, and finds the *St. Paul* decision rests on sound principles long adhered to by Idaho courts. Although the facts are slightly different in this case given Atlantic paid Blue Cross a portion of its defense costs at the conclusion of the *Verska* litigation rather than during the litigation, the issue presented is identical to the issue considered in *St. Paul.* Prior to this action, and absent any facts in the record suggesting otherwise, Atlantic never sought or obtained a declaration that it had no obligation to provide coverage.

Atlantic acknowledged a potential defense obligation for the *Verska* lawsuit, and has not pointed to any policy provision granting it a contractual right to reimbursement in the event it was ultimately determined it had no duty to defend. Atlantic admitted at the hearing that no specific provision in its policies granted it such a right. Atlantic paid Blue Cross $600,000. There is no dispute, and Atlantic admitted, that money was to reimburse Blue Cross for defense costs, which included costs and attorney fees. Atlantic, like St. Paul, now seeks a declaration that it had no obligation to provide coverage, and claims it is entitled to reimbursement of the $600,000 in defense costs it paid Blue Cross pursuant to the reservation of those rights in its reservation of rights letter, or under a theory of unjust enrichment. The procedural posture and the issues raised here are identical to those considered in *St. Paul*, and therefore the result should be the same.

Atlantic has not pointed to any circumstances, such as statutory amendments, changes in or development of relevant case law, or other factors to undermine the persuasiveness of Judge Lodge's opinion in *St. Paul*. Atlantic could not point the Court to any Idaho law that would call into question the holding in *St. Paul*. And this Court does not disregard the opinions of its esteemed colleagues without good and sufficient reasons. However, neither does this Court abrogate its own duty to independently analyze the facts and arguments presented, and therefore will set forth the reasons why it finds Atlantic's arguments for disregarding *St. Paul's* holding unpersuasive.

Atlantic contends that a ruling dismissing its claim for reimbursement is premature, because at least according to authority from other jurisdictions, Atlantic has stated a claim and a determination regarding reimbursement should wait until a motion for summary judgment has been filed. *St. Paul* treated the two issues—coverage and reimbursement—as separate, independent issues. According to *St. Paul's* holding, a finding of no coverage does not automatically entitle the insurer to reimbursement of defense costs. The converse is true as well—a right to reimbursement could exist under the policy, but the Court must make an independent determination on the coverage issue.

At this time, the Court is not asked to determine the coverage issue. Under *St. Paul*, a coverage determination is not required before deciding the issue of reimbursement. And in this case, nothing would be gained by waiting until summary judgment was filed, as the parties raise no factual issues and the Court has relied solely upon the admissions in Atlantic's Answer and Counterclaim. The legal issue of

entitlement to reimbursement is the heart of the Motion to Dismiss. *St. Paul* held that no insurer right of reimbursement existed absent a reservation of such a right in the policy. Atlantic has no contractual reimbursement right in this case.[4] The Court therefore finds that *St. Paul*'s holding precludes Atlantic's claim for reimbursement of the defense costs it paid to Blue Cross, which claim is asserted in Counts I and II of the Counterclaim under the same theories rejected in *St. Paul*.

Atlantic next contends that *St. Paul* should be rejected because it relied upon Illinois law, which has been rejected in other cases by Idaho state courts and constitutes the minority position. *St. Paul* did rely upon the Illinois case, *General Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092 (Ill. 2005). However, Atlantic's reason for rejecting *St. Paul* because Idaho has rejected Illinois law in other cases involving different facts and issues does not persuade this Court to abandon the reasoning in *St. Paul*. Idaho courts under different circumstances may well have rejected theories considered sound in Illinois. But, Judge Lodge's well reasoned opinion found Idaho law consistent with the holding of *General Agents* on the issue of insurer reimbursement. Although *St. Paul* may follow the minority of other decisions, it is squarely on point here. Without sufficient reason to reject *St. Paul* other than the fact it relies in part upon Illinois

---

[4] Atlantic's argument may be persuasive under different facts, such as if the parties disputed the terms of the policy language that might give rise to an insurer right of reimbursement. But in this case, no dispute exists. Atlantic admitted that the language of its policies does not include a right to reimbursement.

law and follows the minority,[5] this Court is not inclined to disagree with its well reasoned opinion rooted in Idaho law.

Atlantic's public policy argument for rejecting *General Agents* and *St. Paul's* acceptance of its holding is similarly unavailing. In *General Agents*, the Illinois Supreme Court noted that, if the insurer's argument for reimbursement was accepted, the insured was forced into choosing between seeking a defense under the policy, and running the potential risk of having to pay for the defense if it was subsequently determined that no duty to defend existed, or of giving up all meritorious claims that a duty to defend existed. *General Agents*, 828 N.E. 2d at 1102 (citing *Shoshone First Bank v. Pacific Employers Inc. Co.*, 2 P.3d 510, 516 (Wy. 2000)). Atlantic asserts that such policy concerns are absent here, because Blue Cross voluntarily elected to hire its own counsel and assume defense costs, thereby precluding Atlantic from exercising its rights under the Policy and prohibiting it from participating.

The Court views this as a distinction without a difference. That Blue Cross had the means to hire and pay its own defense costs does not render the policy reasons behind the decision in *General Agents* and *St. Paul* less compelling, because under Idaho law, Atlantic had a duty to defend until such time as a coverage determination was made. And an insured's ability to hire and pay for its own lawyers until its insurer steps in to defend does not eliminate the choice that exists, or excuse the insurer's assumption of its duty to

---

[5] The minority, however, is growing as noted in *Am. and Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, No. 88 MAP 2008, 2010 WL 3222404 at *9 (Pa. Aug. 17, 2010).

defend.

The second aspect to Atlantic's argument is its contention that Blue Cross forfeited its rights under the Policy by failing to provide timely notice to Atlantic, hiring its own lawyers, and assuming control of the defense. Thus, Atlantic argues that the duty to defend was never triggered. However, this distinction, too, is unavailing under Idaho law and under the facts of this case, as the Court will explain.

Idaho law establishes that the duty of an insurer to defend is a broader obligation than its duty to pay for damages, and the insurer "must defend a suit against the insured where the complaint alleges facts which, if true, would bring the case within the policy coverage." *Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440, 445, 446 (Idaho Ct. App. 1984). An insurer "is not allowed to 'guess wrong' when it determines the potential for coverage under a policy." *Deluna v. State Farm Fire and Cas. Co.*, 233 P.3d 12, 16 (Idaho 2008).[6] When there is doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer "must defend, and its defense obligations will continue until such time as the claim against the insured is confined to a recovery that the policy does not cover." *Hirst*, 683 P.2d at 445–46. The duty to defend therefore continues until a coverage determination is made. *Kootenai County v. Western Cas. & Sur.*, 750 P.2d 87, 89–90 (Idaho 1988); *see also Hartman v. United Heritage Prop. & Cas. Co.*, 108

---

[6] The duty to indemnify, however, is a separate duty, which is triggered "only where an insurance company would be obligated to pay the underlying action regardless of how it fulfilled its duty to defend." *Deluna*, 233 P.3d at 16. The issue of reimbursement involves Atlantic's $600,000 payment for Blue Cross's costs and attorneys fees incurred by Blue Cross in the defense of the *Verska* lawsuit, and therefore does not implicate Atlantic's duty to indemnify.

P.3d 340, 346 (Idaho 2005) (noting the court's prior holding that if there is a question whether the insurance company has a duty to defend or to indemnify, the proper course of action is to file a declaratory judgment action prior to the resolution of the underlying lawsuit). Should an insurer wrongfully refuse to defend, the measure of damages against it is the insured's reasonable costs and attorneys fees incurred by the insured in the defense of the underlying claim. *Hirst*, 683 P.2d at 447.

While there may be an issue concerning whether Blue Cross gave proper notice to Atlantic under the terms of the Policy, a declaratory judgment action still is required to determine whether the insurer's duty to defend or indemnify is extinguished or discontinued due to breach of the contractual notice provision. *See Kootenai County v. Western Cas. & Sur. Co.*, 750 P.2d 87, 90 (Idaho 1988) (stating that the insurer "had a duty to defend if notice was given in the manner required by the policy"). However, whether proper notice was given to trigger either the duty to defend or the duty to indemnify requires a coverage determination. Unless and until such a determination is made, and once provided with notice, the insurer appears obligated under Idaho law to defend its insured.[7] If the insurer incorrectly takes a position that coverage is forfeited,

---

[7] *But see Viani v. Aetna Ins. Co.*, 501 P.2d 706, 713 (Idaho 1972), *overruled by Sloviaczek v. Estate of Puckett*, 565 P.2d 564 (Idaho 1977) (as to the issue of "other insurance" clauses). *Viani* held that, if the insurer receives no notice of suit against the insured prior to entry of judgment, and the policy provides that coverage is forfeited in the absence of proper notice, the insurer may be relieved of liability. 501 P.2d at 713. While the Court acknowledges that Atlantic's affirmative defenses and Counterclaim include an assertion that Blue Cross forfeited coverage by failing to provide Atlantic with proper notice, Atlantic has pointed to no case, and this Court has found none, that holds late notice, as opposed to no notice, affects the duty to defend once such notice is provided. *Viani* also did not create a hard and fast rule, instead creating an equitable rule allowing insureds to offer valid excuses to show substantial compliance with notice provisions. *Viani , 501 P.2d 706, cited in State of Idaho v. Bunker Hill Co.*, 647

and it is later determined no forfeiture of coverage occurred, it appears that under *Hirst*, 683 P.2d at 447, the insurer does so at its peril.

In this case, the pleadings establish that Atlantic had notice of the *Verska* lawsuit while the lawsuit was pending and before Blue Cross agreed to a settlement. The pleadings also establish that Atlantic acknowledged it could have a defense obligation under its advertising liability coverage. (Ans. ¶ 32,  Dkt. 47.) And Atlantic, prior to seeking a coverage determination, paid to Blue Cross "$600,000 representing the reasonable and necessary defense costs and expenses incurred by Blue Cross." (Ans. ¶ 52; Countercl. ¶ 19, Dkt. 47.) The facts as admitted by Atlantic put this matter squarely within the holding of *St. Paul*. The distinction Atlantic tries to make that forfeiture occurred before any duty to defend was triggered is not persuasive under the admitted facts contained in the pleadings.

### B. Leave to Refile Declaratory Judgment Counterclaim

The determination that the claims for reimbursement contained in Counts I and II of the Counterclaim should be dismissed leaves the Court with a final issue. Both Count I and Count II request the Court to make a coverage determination, an issue that *St. Paul* dictates should be considered separately. As such, it is a claim in it own right. Blue Cross contends that Count I and Count II should be dismissed in their entirety without leave to amend, because Atlantic asserted the absence of coverage as a defense to Blue Cross's

---

F.Supp. 1064, 1075 (D. Idaho 1986). In any event, the issue of notice is a matter left for another day, and nothing discussed herein should be construed as a ruling by the Court on the issue of notice.

claims and therefore a separate counterclaim is unnecessary.

Blue Cross cited *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), in support of its argument that a declaratory judgment action that serves no useful purpose should be dismissed. However, *Wilton* is not directly on point. In *Wilton*, the United States Supreme Court sought to resolve a conflict among the states as to the standard of review applied to a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings. Two divergent opinions had developed, one adopting an abuse of discretion standard while the other required "exceptional circumstances." In *Wilton*, the Supreme Court held that a district court's decision to stay a declaratory judgment action because of parallel state proceedings was committed to the court's sound discretion, and is therefore reviewed for abuse of that discretion. The facts in *Wilton* are not present here, and its holding does not support Blue Cross's position.

It does not appear improper for Atlantic to both raise the lack of coverage as a defense to Blue Cross's declaratory judgment and contribution claims, and also assert a counterclaim for declaratory relief that it had no coverage. Fed. R. Civ. P. 13(b) permits "permissive counterclaims," allowing any claim to be stated as a counterclaim. There is no exclusion to prevent the filing of a counterclaim if simultaneously asserted as an affirmative defense. In *Sequoia Ins. Co. v. Royal Ins. Co. of Am.*, 971 F.2d 1385, 1392 (9th Cir. 1992), the court held that the defendant properly raised plaintiff's breach of the duty to settle in defending against the plaintiff's subrogation, declaratory judgment, and contribution claims, either by way of an affirmative defense or a counterclaim for

declaratory relief. The court remanded the matter for further consideration of the defenses and the counterclaim, thereby implying that a defendant insurer could file both affirmative defenses and a counterclaim for declaratory relief asserting the same defenses of lack of coverage.

Although it may be redundant, it does not appear improper to assert affirmative defenses asserting a lack of coverage as well as a counterclaim seeking declaratory relief for those same reasons. Atlantic may file an amended counterclaim omitting its claims for reimbursement both based upon its reservation of rights and unjust enrichment, and assert a counterclaim for declaratory relief that it had no obligation to provide coverage.[8]

## CONCLUSION

Based upon the foregoing, the Court under the facts of this case sees no reason to depart from the holding in *St. Paul*. Therefore, it will grant the motion to dismiss, but allow leave to amend the Counterclaim to assert a claim for declaratory relief without a claim for reimbursement.

---

[8] Counts I and II of Atlantic's Counterclaim already include a claim for declaratory relief. Atlantic suggested that the Court did not have to dismiss the Counterclaim in its entirety, and instead could retain those portions of the Counterclaim not inconsistent with dismissal of the claims for reimbursement. Rather than attempt to surgically edit the Counterclaim, the Court prefers that Atlantic refile its counterclaim setting forth its claim for declaratory relief.

# ORDER

**IT IS HEREBY ORDERED that:**

1)      Plaintiff's Motion to Dismiss (Dkt. 48) is **GRANTED** with leave given to

Defendants to file an amended counterclaim consistent with the Court's decision herein.

Any counterclaim must be filed on or before September 3, 2010.

DATED: August 23, 2010

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge